**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DUNKIN' DONUTS FRANCHISING
LLC, a Delaware limited liability
company, DD IP HOLDER LLC,
a Delaware limited liability company,
and DB REAL ESTATE ASSETS II LLC,
a Delaware limited liability company,

           Plaintiffs,

v.                                  Case No.

AZIZ AND COMPANIES, LLC,
a Florida limited liability company,
ALA OF ST. PETERSBURG, LLC,
a Florida limited liability company,
ROBERT T. AZIZ, an individual, and
ROBERT C. AZIZ, an individual,

           Defendants.
_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs, Dunkin' Donuts Franchising LLC, DD IP Holder LLC and DB Real Estate Assets II LLC (hereinafter, unless specifically identified, referred to collectively as "Plaintiffs" or "Dunkin'") , sue Defendants, Aziz and Companies, LLC, ALA of St. Petersburg, LLC, Robert T. Aziz and Robert C. Aziz, and allege:

**PRELIMINARY STATEMENT**

1.      This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from Defendants' repeated violations of their Franchise Agreements, Subleases, and Personal Guarantees with Plaintiffs. On three prior occasions, within the preceding twelve-month period, Defendants were notified that they were in default of the Franchise Agreements based on their failure to pay required fees and other amounts to Plaintiffs. Since receiving the third notice to cure on May 26, 2017, Defendants,

once again, are currently in default of the Franchise Agreements based upon their failure to pay the required fees and other amounts to Plaintiffs. On two prior occasions, within the same Sublease year, Defendants were also notified that they were in default of the Subleases based on their failure to pay required rent and other amounts to Plaintiffs. Since receiving the second notice to cure on May 26, 2017, Defendants, once again, are currently in default of the Subleases based upon their failure to pay the required rent and other amounts to Plaintiffs. As a result of Defendants' repeated violations of the Franchise Agreements and Subleases, Defendants are no longer entitled to an opportunity to cure their financial defaults. Accordingly, Plaintiffs recently sent Defendants a Notice of Default and Termination with respect to each of their Dunkin' Donuts shops terminating their respective Franchise Agreements and Subleases. Defendants continue to operate the Dunkin' Donuts shops in violation of the Franchise Agreements. Additionally, Defendants' continued use and enjoyment of Plaintiffs' trademarks, trade name, and trade dress after termination of the Franchise Agreements is a violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* Plaintiffs seek injunctive relief, monetary damages, and other relief against Defendants for these violations.

## PARTIES

2.     Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of franchising independent business persons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts,

interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

3.      Plaintiff DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts" and related marks.

4.      Plaintiff DB Real Estate Assets II LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  It owns or otherwise has a right to possess certain real estate on which Dunkin' Donuts shops are operated.  It is engaged in the business of leasing and subleasing properties to Dunkin' Donuts franchisees.  Unless otherwise specified, Dunkin' Donuts Franchising LLC, DD IP Holder LLC, and DB Real Estate Assets II LLC are collectively referred to herein as "Dunkin'" or "Dunkin' Donuts."

5.      DB Master Finance LLC, a Delaware limited liability company, is the sole member of DD IP Holder LLC and DB Real Estate Assets II LLC.  In turn, the sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company.  The sole member of Baskin-Robbins USA LLC is Baskin-Robbins LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins LLC is Mister Donut of America LLC, a Delaware limited liability company.  The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability company.  The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company.  The sole member of Dunkin'

Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation. The principal place of business of all the foregoing entities is located in Canton, Massachusetts.

6. The sole member of Dunkin' Donuts Franchising LLC is DB Franchising Holding Company LLC, a Delaware limited liability company with is principal place of business in Canton, Massachusetts. In turn, the sole member of DB Franchising Holding Company LLC is DB Master Finance LLC. As stated above, DB Master Finance LLC is a Delaware limited liability company with its principal place of business in Canton, Massachusetts.

7. Defendant Aziz and Companies, LLC ("Aziz and Companies") is a Florida limited liability company with its principal place of business in St. Petersburg, Pinellas County, Florida. At all times relevant to this action, Aziz and Companies was the owner and operator of a retail Dunkin' Donuts shop located at 7595 4th Street North, St. Petersburg, Florida 33702, pursuant to a Franchise Agreement with Dunkin' Donuts Franchising LLC dated September 2, 2008. Aziz and Companies possessed that shop pursuant to a Sublease with DB Real Estate Assets II LLC dated September 2, 2008.

8. Defendant ALA of St. Petersburg, LLC ("ALA of St. Petersburg") is a Florida limited liability company with its principal place of business in St. Petersburg, Pinellas County, Florida. At all times relevant to this action, ALA of St. Petersburg was the owner and operator of a retail Dunkin' Donuts shop located at 1046 4th Street North, St. Petersburg, Florida 33704 pursuant to a Franchise Agreement with Dunkin' Donuts Franchising LLC dated December 15, 2011. ALA of St. Petersburg possessed that shop pursuant to a Sublease with DB Real Estate Assets II LLC dated December 15, 2011.

9. Defendant Robert T. Aziz is a natural person and, upon information and belief, a citizen and a resident of the State of Massachusetts. Defendant Robert T. Aziz is an officer and member of Aziz and Companies and ALA of St. Petersburg (collectively, the "Corporate

4

Defendants"), and personally guaranteed the obligations of those entities pursuant to personal guarantees executed with respect to each of the Franchise Agreements and Subleases.

10. Defendant Robert C. Aziz is a natural person and, upon information and belief, a citizen and a resident of the State of Florida. Defendant Robert C. Aziz is an officer and member of the Corporate Defendants, and personally guaranteed the obligations of those entities pursuant to personal guarantees executed with respect to each of the Franchise Agreements and Subleases.

## JURISDICTION AND VENUE

11. This action arises, in part, under Chapter 22 of Title 15 of the United States Code, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), and presents, *inter alia*, federal questions involving trademark infringement and unfair competition.

12. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) and 1121, and 28 U.S.C. §§ 1331, 1338, and 1367(a).

13. This Court has *in personam* jurisdiction over Defendants because they conduct business in this district, they are residents of this district, and/or the events giving rise to Plaintiffs' claims occurred in this district.

14. This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district, a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and/or this is the judicial district in which Defendants are subject to personal jurisdiction.

## FACTUAL BACKGROUND

### The Dunkin' Donuts System

16.     Dunkin' Donuts Franchising LLC is the franchisor of the Dunkin' Donuts franchise system.

17.     DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Dunkin' has the exclusive license to use and license others to use these marks and trade name and has along with its predecessors used them continuously since approximately 1960 to identify Dunkin' Donuts shops, and the doughnuts, pastries, coffee and other products associated with those shops.

18.     DD IP Holder LLC owns numerous federal registrations for the mark "Dunkin' Donuts" and related marks.  Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.  Each registration is prima facie evidence of the validity of the registration, of DD IP Holder LLC's ownership of the Dunkin' Donuts marks, and of Dunkin' Donuts' exclusive right to use those marks in commerce on the services and goods listed above, as provided in 15 U.S.C. §§ 1057(b) and 1115(a).

19.     The Dunkin' Donuts marks are utilized in interstate commerce.

20.     The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years.  As a result, the Dunkin' Donuts marks have become famous throughout the United States.

21.     Dunkin' Donuts and its franchisees currently operate more than 11,300 restaurants worldwide, including over 8,500 restaurants in the United States.  In the more than fifty-five (55) years since the Dunkin' Donuts system began, millions of customers have been served in Dunkin' Donuts shops.  In fact, more than 3 million customers are served on a typical day.

22. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

**Defendants' Obligations Under the Franchise Agreements**

23. Each of the Corporate Defendants entered a franchise agreement with Dunkin' Donuts Franchising LLC, which granted each a franchise to operate a Dunkin' Donuts shop utilizing the Dunkin' Donuts system, as described in paragraphs 7 and 8 above (collectively, the "Franchise Agreements").

24. The Franchise Agreements are substantially identical.

25. Corporate Defendants were licensed to use the Dunkin' Donuts trademarks, trade names, and trade dress in accordance with the terms of their respective Franchise Agreements.

26. Under the Franchise Agreements, Corporate Defendants agreed to use Dunkin' Donuts proprietary marks, including, but not limited to, their trademarks, service marks, logos, emblems, trade dress and other indicia of origin, only in the manner and to the extent specifically licensed by the Franchise Agreements. (Franchise Agreements §§ 2.1, 2.4(a) and 9.0).

27. Under the Franchise Agreements, Corporate Defendants agreed to, among other things, (i) pay a franchise fee equal to 5.9% of gross sales of the business, (ii) pay an advertising fee equal to 5.0% of gross sales of the business, (iii) pay late fees, interest and costs on unpaid monies due under the Franchise Agreements, and (iv) pay all sums owing and any damages, interest, costs and expenses, including reasonable attorneys' fees, incurred as a result of Defendants' defaults. (Franchise Agreements §§ 5.2, 5.3, 5.7, 14.4.4 and 14.7.1).

28. Corporate Defendants agreed that it would be a default under the Franchise Agreements if they breached any obligation under the Franchise Agreements, including failing to pay any of the required fees. (Franchise Agreements § 14.1.2).

29. Corporate Defendants agreed that Dunkin' may terminate the Franchise Agreements without providing an opportunity to cure if Corporate Defendants defaulted under the Franchise Agreements and received three (3) or more notices to cure for the same or substantially similar default (whether or not they had cured the default) within the immediately preceding twelve-month period. (Franchise Agreements § 14.2).

30. Corporate Defendants agreed that upon the termination of the Franchise Agreements, their right to use the Dunkin' Donuts proprietary marks and system would cease, and they would immediately cease to operate the franchised businesses, cease to use the proprietary marks and system, and would not, directly or indirectly, hold themselves out as a present or former Dunkin' Donuts franchisee.. (Franchise Agreements §§ 14.6, 14.7.2 and 14.7.3).

31. Corporate Defendants agreed that any unauthorized use of the Dunkin' Donuts proprietary marks following termination of the Franchise Agreements would result in irreparable harm to Dunkin', and would constitute willful trademark infringement. (Franchise Agreements §§ 9.3, 10.3, 10.4 and 14.5).

32. Defendants Robert T. Aziz and Robert C. Aziz (collectively, the "Individual Defendants"), personally guaranteed each of the Corporate Defendants' obligations under the respective Franchise Agreements.

**Defendants' Obligations Under the Subleases**

33. Each of the Corporate Defendants entered a sublease with DB Real Estate Assets II LLC, pursuant to which each leased the land and building for their Dunkin' Donuts shop, as described in paragraphs 7 and 8 above (collectively, the "Subleases").

34. The terms of the Subleases are substantially identical.

35. Under the terms of the Subleases, Corporate Defendants were entitled to possess their respective locations and were required to pay rent, percentage rent and other rental expenses. (Subleases §§ 1.4, 1.6, 2.1, 2.2 and 2.3).

36. Corporate Defendants agreed that they would be in default of the Subleases if they failed to pay when due any monies owed under the Subleases. (Subleases § 9.2).

37. Corporate Defendants agreed that DB Real Estate may terminate the Subleases without providing an opportunity to cure if Corporate Defendants defaulted in the payment of rent, percentage rent or other rental expenses and received two (2) or more notices to cure for nonpayment of rent, percentage rent or additional rent in any Sublease year. (Sublease § 9.2).

38. Corporate Defendants agreed that DB Real Estate may terminate the Subleases immediately and without providing an opportunity to cure if the Franchise Agreements are terminated. (Subleases § 13.7).

39. Individual Defendants personally guaranteed each of the Corporate Defendants' obligations under the respective Subleases.

**Defendants' Defaults and Termination**

40. Defendants breached the Franchise Agreements, the Subleases and Personal Guarantees, as applicable, by failing to pay the required fees, rents, and/or other amounts owed to Plaintiffs, on several occasions.

41. Pursuant to the applicable provisions of the Franchise Agreements and Subleases, on July 29, 2016, March 9, 2017 and May 26, 2017, Dunkin' Donuts sent each of the Corporate Defendants separate Notices to Cure notifying them that they were in default of the Franchise Agreements and Subleases based on their failure to pay the required fees (the "Notices to Cure"). Since receiving the May 26, 2017 Notice, Corporate Defendants are once again in default of each of the respective Franchise Agreements and Subleases based on their failure to pay the required monies owed to Dunkin' Donuts.

42. As a result of Corporate Defendants' previous three defaults under the Franchise Agreements and respective Notices to Cure, pursuant to Section 14.2 of the Franchise Agreements, on June 26, 2017, Dunkin' sent Defendants a Notice of Default and Termination with respect to each franchised business (collectively, the "Notices of Termination"). The Notices of Termination terminated the Franchise Agreements, stated the grounds for termination, and requested that Corporate Defendants immediately comply with their post-termination obligations as set forth in the Franchise Agreements.

43. As a result of Corporate Defendants' previous two defaults under the Subleases and respective Notices to Cure, pursuant to Section 9.2 of the Subleases, Dunkin' also sent the Notices of Termination with respect to each of the Subleases. The Notices of Termination terminated the Subleases, stated the grounds for termination, and demanded possession of the leased premises.

44. Pursuant to Section 13.7 of the Subleases, the Notices of Termination also terminated the Subleases based on termination of the Franchise Agreements.

45. Notwithstanding Defendants' non-performance under the Franchise Agreements and Subleases, the resulting termination of the Franchise Agreements and Subleases, and the

10

Notices of Termination, Defendants have continued to operate the Dunkin' Donuts shops using the Dunkin' Donuts marks and system without having any right or license to do so.

46. Defendants' continued unauthorized use of the Dunkin' Donuts marks and system is causing and will continue to cause Dunkin' Donuts irreparable harm.

47. Plaintiffs have been forced to engage undersigned counsel to represent them in this case.

48. Plaintiffs are obligated to pay undersigned counsel a reasonable fee for professional services provided in this case.

## COUNT I

**(Breach of the Franchise Agreements)**
**(Corporate Defendants)**

49. The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

50. Dunkin' has performed all of its obligations under the Franchise Agreements.

51. Corporate Defendants' conduct described herein constitutes breaches of the above-described contractual obligations contained in the Franchise Agreements.

52. Those breaches constitute good cause for terminating the Franchise Agreements.

53. As a result of Corporate Defendants' actions and inactions, Plaintiffs have suffered and are continuing to suffer irreparable harm, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT II

**(Breach of the Subleases)**
**(Corporate Defendants)**

54. The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

55. Dunkin' has performed all of its obligations under the Subleases.

56. Corporate Defendants breached the Subleases by failing to pay rent and other amounts due to Dunkin'.

57. Corporate Defendants also breached the Subleases by permitting the Franchise Agreements to be terminated.

58. Those breaches constitute good cause for terminating the Subleases.

59. As a result of Corporate Defendants' actions and inactions, Plaintiffs have been damaged.

## COUNT III

### (Breach of Personal Guarantees)
### (Individual Defendants)

60. The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

61. Dunkin' has performed all of its obligations under the Franchise Agreements and Subleases.

62. Corporate Defendants' conduct described herein constitutes breaches of the above-described contractual obligations in the Franchise Agreements and Subleases.

63. Those breaches constitute good cause for terminating the Franchise Agreements and Subleases.

64. Pursuant to the terms of the Personal Guarantees, the Individual Defendants agreed, among other things, that upon a default under the Franchise Agreements or Subleases, they would immediately make each payment and perform each obligation required by those agreements.

65. Despite Individual Defendants' obligations to do so, they have failed to make any payments or perform each obligation required by the Franchise Agreements and Subleases.

66. As a result of Individual Defendants' actions or inactions, Plaintiffs have suffered and are continuing to suffer irreparable harm, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV

**(Trademark Infringement)**
**(All Defendants)**

67. The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

68. The use in commerce of the Dunkin' Donuts trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without Dunkin's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin'. Such unauthorized use of the Dunkin' Donuts trademarks and trade names infringes the exclusive rights in its trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

69. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

70. As a result of the actions of Defendants, Plaintiffs have suffered and are continuing to suffer irreparable harm, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT V

**(Unfair Competition)**
**(All Defendants)**

71. The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

72. The use in commerce of the Dunkin' Donuts trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without Dunkin's consent is

likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of the Dunkin' Donuts trademarks and trade names violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

73. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

74. As a result of the actions of Defendants, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT VI

### (Trade Dress Infringement)
### (All Defendants)

75. The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

76. Corporate Defendants' respective shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same lettering style and in the same distinctive color scheme as Dunkin' uses for the shops operated by Dunkin's licensees.

77. The use by Defendants of trade dress that is identical to the Dunkin' Donuts trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts shops operated by Dunkin's licensees. Such adoption of Dunkin' Donuts trade dress violates Section 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

78.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake or deceive.

79.     As a result of the actions of Defendants, Plaintiffs have suffered and are are continuing to suffer irreparable harm, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

1.     Enter a declaratory judgment that Defendants' conduct violated the terms of the Franchise Agreements and Subleases, and constituted good cause for termination of those agreements;

2.     Enter an order ratifying and enforcing the termination of the Franchise Agreements and Subleases as of the effective date contained in the Notices of Termination;

3.     Enjoin Defendants, and their agents, servants, employees and attorneys, and all others in active concert or participation with them, from infringing upon the Dunkin' Donuts trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Dunkin' Donuts;

4.     Enjoin Defendants, and their agents, servants, employees and attorneys, and all others in active concert or participation with them, to comply with all post-termination obligations under any contract with Plaintiffs, including but not limited to, the Franchise Agreements, Subleases and Personal Guarantees;

5.     Enter a judgment in favor of Plaintiffs For the damages incurred as a result of the breaches of the Franchise Agreements, Subleases and Personal Guarantees;

6.     Award Plaintiffs prejudgment interest in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117 and applicable law;

7. Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to the Franchise Agreements, Subleases, Personal Guarantees, and Section 35 of the Lanham Action, 15 U.S.C. § 1117; and

8. Award Plaintiffs such other relief as this Court may deem just and proper.

Dated: June 28, 2017

/s/ Paul D. Watson
Paul D. Watson
Florida Bar No. 957224
R.J. Haughey
Florida Bar No. 123617
SIVYER BARLOW & WATSON, P.A.
401 E. Jackson Street, Suite 2225
Tampa, Florida 33602
Telephone: (813) 221-4242
Facsimile: (813) 227-8598
pwatson@sbwlegal.com
afindlay@sbwlegal.com
rhaughey@sbwlegal.com
ehirshfeld@sbwlegal.com
Attorneys for Plaintiffs